Leonard M. Japp and Eugenia Japp v. Commissioner.
Japp v. Commissioner
Docket No. 20264.
United States Tax Court
1950 Tax Ct. Memo LEXIS 119; 9 T.C.M. (CCH) 705; T.C.M. (RIA) 50200; August 17, 1950
*119 Herbert Portes, Esq., 59 E. Van Buren St., Chicago 5, Ill., and Leonard Schanfield, Esq., for the petitioners. Charles D. Leist, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion This proceeding involves a deficiency in income tax for 1944 in the amount of $159,017.47. Of the several issues raised by the pleadings, all except two have been settled by stipulation of the parties. The two remaining issues are whether respondent erred in his refusal to recognize the validity, for federal income tax purposes, of an alleged partnership between the petitioners Leonard M. Japp and Eugenia Japp, doing business as Special Foods Company, and whether respondent erred in his determination that petitioner Eugenia Japp realized a capital gain upon the sale of a partnership interest in a business known as Waulters Potato Chip Company. Some of the facts were stipulated and are so found. The stipulation filed is incorporated herein by reference. Findings of Fact The petitioners are husband and wife residing in Chicago, Illinois. They filed a joint income tax return for 1944 with the collector of internal revenue for the first district of Illinois. *120 Prior to July 1, 1938, George F. Johnson and petitioner Leonard M. Japp, hereinafter referred to as the petitioner, were individually engaged in selling potato chips and allied products in Chicago. On that date they formed an equal partnership under the name of Special Foods Company. After they became partners they divided their sales routes and employed additional salesmen to operate them. By the fall of 1939 the business had expanded and moved into larger quarters, and Johnson ceased driving a truck and took charge of all administrative work and sales. In April 1941 the partnership acquired under a contract for deed a plant for the manufacture and packaging of its own potato chips. The plant was acquired at a total cost of $45,000, of which $3,500 was paid in cash and the balance, plus interest, was payable in monthly installments over a ten year period. Petitioner supervised the installation of machinery and other preparations in the plant to manufacture and package potato chips. In September 1941 the partnership began to manufacture and package its own potato chips, and petitioner thereafter devoted himself to the supervision of production in the plant. Johnson continued to *121 have charge of administrative work and sales. By 1944 the business employed about 100 persons, of whom about 20 were salesmen, about four were office employees, and about 75 were production workers in the plant. Johnson continued to have charge of all sales activity through a sales manager, advertising, accounting and other office matters. Petitioner had charge of the production end of the business and the employees engaged therein. Petitioner Eugenia Japp, hereinafter referred to as Eugenia, and the petitioner were married in 1939. Eugenia had an extensive business background. In addition to business training in school and in her parents' bakery, she had several years of experience in general office work, accounting, and office management with business firms in Chicago. Immediately after her marriage to petitioner she became interested in Special Foods Company. She frequently discussed business problems with petitioner and with Johnson, assisted in the office and plant, assisted in expanding the advertising program, developed recipes for the use of potato chips in home cooking, helped eliminate some production problems, and made important improvements in the firm's office management *122 and bookkeep ng systems. In April 1944 Eugenia and Marion D. Johnson, the wife of petitioner's partner, formed a partnership and purchased the Waulters Potato Chip Company of Milwaukee, Wisconsin. Each partner invested $11,500 in the business, giving it a total capital of $23,000. Of this amount, $15,000 was paid for the assets of the business and $8,000 was invested as working capital. Eugenia's contribution of capital came entirely from her personal savings. The partners hired a business manager for the Waulters business and also retained Margaret M. Waulters, the former owner of the business, in an advisory capacity. The partners visited the business personally only about one day every two weeks, leaving the routine management of the business to the business manager. Following a series of differences between petitioner and Johnson in the operation of Special Foods Company, on May 8, 1944, Johnson suggested that the partnership be dissolved by one partner buying out the other. He also proposed that the partner who sold out be allowed to buy the interest of the other partner's wife in the Waulters business. Petitioner was opposed to dissolving the partnership and at first was *123 reluctant to buy out Johnson because of his inability to handle the administrative and sales end of the business. The partners agreed to take a month to think the matter over. When petitioner discussed the matter with Eugenia, she immediately urged him to agree upon dissolution of his partnership with Johnson and agreed to sell her interest in the Waulters business to Johnson if she and petitioner could buy out Johnson's interest in Special Foods Company. Eugenia insisted that she could take Johnson's place in the business, and on about May 20 she convinced petitioner that they should buy Johnson's interest and form a partnership to operate Special Foods Company. On that date petitioner and Johnson agreed to dissolve their partnership as of May 20 and to liquidate the business unless they agreed within sixty days upon a purchase of one partner's interest by the other. Petitioner and Eugenia employed an attorney to represent them and informed him of their intention to buy out Johnson and to operate the business themselves as partners. On May 26 petitioner and Johnson agreed that Johnson's interest be sold for $150,000. The attorneys representing Johnson and petitioner and Eugenia *124 thereafter completed negotiations for the purpose of effectuating the intention of the parties. On June 20, 1944, all necessary documents having been prepared by the attorneys, petitioner and Johnson executed an agreement for the purchase of Johnson's interest for $150,000, payable $10,000 in cash at that time, $40,000 in cash when the transaction was consummated by delivery of all collateral documents, $50,000 in the form of a chattel mortgage installment note, and $50,000 in the form of a trust deed installment note. On the same date Eugenia assigned her interest in the Waulters business to Johnson, who immediately paid her $11,500 as full payment for that interest. Also on June 20 petitioner and Eugenia signed a partnership agreement which provided that they would operate Special Foods Company as equal partners in the sharing of profits and losses and in the assumption of all obligations. Eugenia then contributed the $11,500 she received from Johnson to the capital of Special Foods Company. Petitioner later made a gift to Eugenia of a one-half interest in Special Foods Company, less the amount of cash contributed by her, reporting the gift in a gift tax return but paying no *125 gift tax. Under the partnership agreement petitioner was designated general manager of the business at a salary of $200 per week. Eugenia was to receive a salary of $75 per week. After the partnership agreement was executed petitioner and Eugenia informed their employees, business acquaintances, and the general public of the new partnership. They also executed a certificate of doing business under an assumed name and formally notified the Potato Chip Institute, the banks, the appropriate state authorities, and the collector of internal revenue that they were the joint owners and the new partners of Special Foods Company. Until about July 10, when the transaction with Johnson was consummated by delivery of all notes, deeds, and collateral documents, Johnson continued to perform services for the business on a salary basis, having waived all right to any share of profits earned after May 20. On about July 10 Johnson terminated all connection with the business and Eugenia thereafter assumed full control of the administrative end of the business. Petitioner and Eugenia immediately completed arrangements with the banks where Special Foods Company did business for either of them to sign *126 checks for the partnership. On August 2, 1944, having paid the balance due on the Special Foods Company plant, petitioner and Eugenia took title to the property as joint tenants. New insurance policies covering the business property were issued to petitioner and Eugenia, under Eugenia's direction, by a new insurance agent whom she contacted. After Johnson left the business Eugenia took over all his work with the exception of the supervision of truck maintenance, working on a full-time basis in the business throughout the taxable period here involved. She assumed full responsibility for all administrative work of the business, taking charge of the office and books and records, hiring office and sales employees, supervising sales and business policy, approving bills, writing most of the partnership checks, and managing the advertising program. Under Eugenia's direction the advertising done by Special Foods Company was coordinated into a regular program and expanded to approximately four times what it had been in the previous year. She also made improvements in the payroll, cost, accounting, and sales records of the business. Petitioner concerned himself primarily with supervising *127 plant operation and production. He also checked bills for production supplies, signed some checks, and supervised truck maintenance, but left all other administrative responsibilities to Eugenia. During the period from January 1, 1939, through May 20, 1944, the Special Foods Company earned the following net income: Year
Amount
1939
$ 9,474.22
1940
13,329.94
1941
19,363.68
1942
52,401.04
1943
109,773.92
1944 (through May 20)
112,085.80
A partnership income tax return was filed for Special Foods Company for the fiscal period May 21, 1944, through January 31, 1945, reporting net income of $151,479.44, of which $73,458.47 was considered distributable to Eugenia and $78,020.97 distributable to petitioner. The partnership books show that during this period petitioner withdrew $29,586.85 from the business and that Eugenia withdrew nothing. The unwithdrawn balances of earnings considered distributable to petitioner and Eugenia during this period were credited to their respective capital accounts. The true net income of Special Foods Company for the fiscal period May 21, 1944, through January 31, 1945, after giving effect to the adjustments made in accordance *128 with the stipulation filed in this proceeding, was $165,990.09. None of the income was reported by petitioner and Eugenia in their joint return for 1944 since the return was filed upon a calendar year basis while the Special Foods Company books were kept and the partnership return was filed upon a fiscal year basis ending January 31, 1945. The partnership of the petitioner and Eugenia to operate Special Foods Company was formed for business purposes with a bona fide intention to form a real and true business partnership for all purposes. Opinion LEMIRE, Judge: The principal issue we must determine is whether the petitioner and his wife, Eugenia, were equal partners during the taxable period of May 21, 1944, through January 31, 1945, in a partnership doing business as the Special Foods Company. Respondent determined that they were not, and has taxed all of the income of the business realized from May 21, 1944, through December 31, 1944, to the petitioner as the sole owner of the business. In the determination of whether the validity of the partnership here involved should be recognized for federal tax purposes, the ultimate question for decision is whether the partnership is *129 real within the meaning of the federal revenue laws. That is, we must determine, considering all the facts throwing light upon their true intent, whether the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. . No lengthy discussion of our findings of fact is warranted here. An analysis of the facts shows that Eugenia was largely responsible for petitioner's continued participation in the business after dissolution of his partnership with Johnson. Eugenia also intended to take, and did take, Johnson's place in the business as a full partner. She had equal authority in the management of the business and played a vital part in the successful operation of it. She contributed a substantial amount of capital to the business, worked in the business as a partner, and was known as a partner to everyone connected with the business. The evidence is that the parties intended for her to become, and that she did become, a partner, in the fullest sense, in the operation of the business. Respondent contends that even if the agreement of June 20, 1944, created a bona *130 fide partnership, it cannot be given retroactive effect to May 21, 1944, which is the date when petitioner claims the partnership came into existence. We think that the facts support respondent's contention. The chronological order of events was as follows: The dissolution of petitioner's partnership with Johnson was proposed on May 8; on about May 20 petitioner and Eugenia decided to buy out Johnson and to become partners; on about May 26 petitioner and Johnson agreed upon dissolution of the partnership through sale of Johnson's interest to petitioner and Eugenia, and the sale was made on June 20, after which petitioner and Eugenia entered into their partnership agreement. Prior to June 20 Eugenia contributed nothing to the business in the form of either capital or services, had no voice in its management, and was no more than an interested party who intended to become a partner in the future. An intent to become partners in the future does not fulfill the requirements of a partnership. We conclude that petitioner and Eugenia became partners in the Special Foods Company on June 20, 1944. It follows that the income realized from the *131 business during the period May 21 to June 20, 1944, was the income of petitioner alone and is taxable to him in his personal return for that year. The remaining issue is whether respondent erred in his determination that Eugenia realized a capital gain on the sale of her interest in the Waulters Potato Chip Company to Johnson. The petitioners contend that Eugenia invested $11,500 in the business and sold her interest for the same amount, realizing no gain upon the sale. The evidence is that Eugenia and Marion D. Johnson each invested $11,500 in the business, $7,500 of which was in payment for the assets and $4,000 a contribution to working capital, and that Johnson bought Eugenia's interest for $11,500. Respondent's determination that Eugenia realized a gain upon the sale was apparently based solely upon his determination that she paid $7,500 for the assets of the business without taking into account her additional investment of $4,000 for working capital. The petitioners have thus sustained their burden of proof on this issue. We conclude that respondent's determination was in error. Decision will be entered under Rule 50.